The next case is Lingeswaran v. U.S. Attorney General. Mr. Arudh Kauranarayan is here for the petitioner, Ms. Ego for the Department of Justice. Counsel, you may begin. May it please the Court, I represent the petitioner Karooshan Lingeswaran in this matter, Your Honor. There are five issues in this case. Our first issue, Your Honor, whether the agency took into account the fear of persecution based on the fact as a Tamil, based on the fact that he is a member of an LTT family, based on the fact that he is a failed asylum seeker. In the BIA brief, the petitioner's counsel argued that you should take all these three in conjunction and to analyze his fear of persecution. The government responded, well, the judge took the fact about the asylum seeker argument because the immigration judge relied on a one-page document by the Prime Minister and said everything is fine now. You don't have to worry about the fact you sought asylum. Okay, argue and doubt, we'll take that into account. The immigration judge took into account the failed asylum seeker argument. But the immigration judge or the board did not take into account the fact that he belongs to an LTT member family. That is very important. The government did not address that issue in the brief. Because had you taken that into account, it would have made a big difference. Because even the State Department, even the State Department in their report says that  significant problems of people, among others, people who are... How do you answer the Pereira case, though, that says that when there's been a civil war and the war is over and the government feels that people might belong to a terrorist group or a group that want to overthrow the government, and this, I forget your acronym, I'll call them the Tiger, the Tiger group, that this Tiger group were terrorists, our government recognizes them as terrorists, and that this person, if they're questioned or interrogated, be based on the fact of concern that they're a member of this terrorist group. That's something that's called not persecutorial, but prosecutorial. How do you handle the Pereira case? Yes, Your Honor. First of all, the war has never been a basis for asylum. There is no case law that a person has been granted asylum because they are so war. No, but if a person is suspected or you're trying to figure out who's a terrorist and who's not when guns have been laid down, focusing on that perceived link has been considered  Precisely, Your Honor. So we are talking about prosecution versus persecution. The government has every right to investigate, to prosecute a terrorist, a so-called terrorist. So the question is, has the government done that? There is no prosecutorial measure or taken with respect to my client. In fact, this case is very similar to matter of SP, the seminal case on Nexus by the BIA. And interestingly, that case was a Tamil from Sri Lanka. The BIA identified several factors for the prosecution and said none of this thing has been happened. Similarly, none of the prosecution, he was never taken before a judge. He was never issued a charging document. Nothing happened. Even the judge acknowledged it's okay to question, but it is not okay to torture him or persecute or beat him. The judge himself said, but that's what the record has. The record comes as a conclusion. If you are perceived as a terrorist or as an LTT member, then you are immediately subject to torture. The UN special rapporteur. We're thinking, your client's thinking in practical terms about what's going to happen when he goes back. Yes, Your Honor. What's going to happen. And a couple of things about this seem to me to go against you in terms of that being a real fear. One thing is that his mother and brother are back there and apparently doing fine. And the second thing, and this is a concern of mine, maybe doesn't fit into a pigeon hole very well, but your client went to France, apparently happy in France. In France for five years, they're even giving him a check every month. Could have stayed in France as far as we know. He didn't show up for his amnesty hearing. He decides to pick up and go to the Bahamas and illegally enter the United States. He's even offered the chance maybe to go to Canada and forgo this where he's got family. He says no to that. The fact that he would leave France where he was safe, all indications are would have been allowed to stay, to come to the United States where it would be very iffy for him here illegally to get amnesty, suggests to me he's not real worried about when he goes back to Sri Lanka that he's going to be persecuted, or else he would have stayed in France. Let me handle the first thing, Your Honor. With respect to the status of his mother and the brother, our two arguments, Your Honor. First, the brother is not living there happily. He testified the brother was tortured because of him. It's not that they are living there happily. And then the brother has been asked to come every month to sign. But he's not being persecuted. He's being watched because of the concern he was part of this terrorist group. No, no, no. First, he was tortured. Torture is persecution. It's more than persecution. He was tortured. And the immigration judge found incredible. So he said when they went there, his brother was tortured. And then he was released and asked to come every week, every month to sign. So it's not, first of all, they are not living happily or safely. Secondly, their situation is not similar to my client's situation. My client is perceived by the government as connected to the LTT and he was put on a line to be taken to another camp. Well, how do you react to the fact that the IJ who did a pretty, went through the different treatises and things and the conclusion was that while things have been rough right after the war, that things are greatly improving in the country? Your Honor, the evidence compelling, the IJ relied on a 14th of January 2017. But he has the right to make the findings of fact and our standards are very, very high, very difficult to reverse that, correct? Yes, Your Honor. But let me, the IJ identifies certain factors saying that things are improved. But that I come to the second part, Your Honor. But our position is that the evidence compels a conclusion. The record compels a conclusion. That is not true. Because we put the subsequent UN reports that says that if you are connected to the LTT or something, you are immediately, you are subject to torture. Even the State Department says, Your Honor. So that's a secondary question. So first the court's question about France, Your Honor, maybe that was his bad judgment. But that has nothing to do, nothing to do with the fact whether he has a well-founded fear of persecution. The fact that he left France, the Congress has acted on those issues called firm settlement, called safe third country. Suppose the government is not coming and arguing that he is firmly resettled so he cannot claim asylum. Government is not coming and arguing that there is a safe third country exception, there is an agreement between the U.S. and France so he cannot claim asylum. So the fact that he left France may be not a good idea. But that has nothing to do, nothing to do with his fear of persecution to return to Sri Lanka, Your Honor. You said that he's being persecuted for the government's perceived sense that he's affiliated with the LTT. If he's actually with the LTT, which has been designated as a terrorist group, is he entitled to asylum here? First of all, that issue has never come up in the adjudication. Neither the IJ nor the BIA raised that issue. First of all, he never said that he's a member of the LTT, Your Honor. He said that he was forced to do something for the LTT. But the important point, Your Honor, the government is not... He's paid dues, his family has some association with the LTT. I mean, there is some circumstantial evidence of his involvement. No, no, he didn't pay dues, Your Honor. His father paid dues. He didn't pay dues. He was class president, though, of a school where he did a lot of public protests in favor of suicide bombers and things like that. But first of all, our main argument is suppose the government had some information. If the government says, we knew that you did this, this, this. The government has nothing. The respondent argued because of the admitted admission. He never admitted to the Sri Lankan government. He admitted to the U.S. immigration judge. It has nothing to do with... So the government went after him not based on any evidence. They went after him because of the fact that his father was an LTT member and also according to the... Yeah, the Pereira cases and scenarios where wars are over and you don't know who's who and who's got a bomb in their backpack or who doesn't. When you are focusing on people because you're trying to weed out who is and who isn't, you're focusing on the fact we think you're a terrorist and you'll return to government. That is something that is prosecutorial, not persecutorial. In Pereira case, the underlying theme, issue is whether the political dimension, whether the political implication amounts to political opinion. That is the essence. It's not just simply prosecution. The Pereira case, what they talk about, whether the political dimension or the political implication amounts to political opinion. And our position in Pereira case, the context is not like that. But in the Sri Lankan case, the context, in fact I cited in my reply brief, even in another case, BIA was citing Sri Lanka as an example. BIA, the political dimension and the political implication amounts to political opinion. The context-sensitive analysis. That's where we distinguish this case from Pereira case. In fact, the government, our main argument for the government to investigate, there is no basis there. And second of all, the government did not take any prosecutorial measures. This case is identical to the matter of SP. A similar case on Nexus by the BIA itself. They talk about the laws Sri Lanka has, PTA and emergency regulation. The same laws are still here, still in this case. And based on that context, and also we don't have to prove the existence of political opinion. All we have to see, whether it's reasonable to believe that this may be one of the reasons. We don't have to prove this is the sole reason. We have to prove this is one of the reasons. That's what we have to prove. All right. I think we have your argument, counsel. We'll hear from the government. Good morning. Alison Igoe, Office of Immigration Litigation, representing the respondent. I'd like to just preliminarily correct the record. I'm not sure it indicates that the petitioner in this case is detained. Just before I left my office, I received a habeas petition that he has filed, challenging his detention. So he is in detention, and he's been in detention I believe for several years. So I think the court takes that into account. Why are you telling us this? Because usually we need to tell the court because they put it on a special track when somebody is detained. That's all. I just want to because it doesn't appear on the briefs. We normally state it up front that the person is detained. Just in terms of timing. How about that last point that he made before he sat down? That all he needs to demonstrate in order to satisfy the nexus requirement is that if he returns to Sri Lanka, they're going to persecute him because he is a Tamil. Even if there's another legitimate reason, like he's a member of a terrorist organization, wouldn't he meet the requirements of the statute such that he's entitled to asylum and withholding of removal? If he can. He did not get a presumption of a well-founded fear of persecution because there was a finding in this case that the treatment that he received was not serious enough to rise to the level of persecution and so therefore it wasn't torture, even though he claims his brother was tortured, and that there was not a nexus. The agency didn't address that, did it? No, the agency didn't. So if the court were to... The only thing the agency decided, and correct me if I'm wrong now, but my understanding is that because he's a member of a terrorist organization, that's a legitimate reason for the denial of his application, so therefore his application is denied. I think that that is not correct. I don't think the court did not below find that he was a member of a terrorist organization. They said that there was no nexus between the treatment that he received and a ground protected by the statute, and I'd like to return to that... My reading of it was they were saying whatever happened to it, however you want to characterize it, it happened because of the suspicion that he was a member of a terrorist group, not because he was a Tamil, because there are lots of Tamils that aren't getting tortured, but it was because they believed he was a terrorist. That's what he argues now, but that's not what he testified to. What he testified to was that he was pulled out of this camp. But I thought that was the basis of the... I'm arguing that's what your agency believes. It's not because he's a Tamil, but because they thought he was a terrorist, correct? They thought he was attached to a terrorist family, and he testified that he was pulled out of this camp of 50,000 to 60,000 Tamils because his aunt, who was an admitted LTTE member, escaped from the camp, and they believed that he had helped her. And so they said that that is not a nexus to a ground protected under the statute. He claims... Because if they were going after him, persecuting him for being a Tamil, they went into a group of Tamils, and they pulled him. They pulled him, and he alleges that they pulled 50 other people that were suspected. And interestingly enough, he testifies that there was a line of 50 people who were suspected of being LTTE members. He was not on that line. He says that he was pulled out. They were angry at him, and they beat him because his aunt, who was an LTTE member, had escaped, and they thought that he helped her, and they were angry at him for lying. So it's not even clear from this that the motivation was that they suspected him of being an LTTE member, which he has always denied, but rather that they were investigating the escape of his aunt from the camp, and they thought that he had a hand in it. And that's what he testified to. So there really isn't any evidence, and as you pointed out, Judge Branch, this was a camp of 50 to 60,000 people, and if they pull out 50 or 51 people, the rest, all of whom were Tamils, it cannot be. There's no evidence that it's on the basis of his ethnicity, rather than the fact that they are investigating. So he did not have a presumption of a well-founded fear, so he had to prove that. And, you know, the IJ found and the board agreed that his family and his brother, who was in a very similar situation to him, and his mother had been living there since he left in 2010. Now his brother was originally arrested and questioned about this affiliation with an LTTE family member, but his brother has since lived there, and he has to report, but he has not been arrested, he has not been bothered, he hasn't been harassed. And so this record does not compel a conclusion that he is at risk personally of being persecuted. So he then raises the issue of a pattern of practice, and the court found there was no pattern of practice because the pattern of practice, while there is evidence that there was torture and there's mistreatment of people, that it more goes to a prosecutorial type of treatment where it's not focused necessarily on Tamils, but people who are arrested for various crimes, particularly security crimes, but various crimes are subjected to mistreatment in the prisons there. And the immigration judge acknowledged all of that evidence, although the petitioner said that she did not take into account, or he did not take into account, all of the evidence. The IJ definitely acknowledged all of that mistreatment, acknowledged that there are some problems, and also acknowledged that Tamils are discriminated against, they are harassed, but found that there was not a pattern of practice specifically against Tamils in Sri Lanka. This court has said that in order to find a pattern of practice, that the pardon me, let me just take a look at the language that the you'll prevail only if it is, that the mistreatment is so extreme that it shows a systematic, pervasive, or organized effort to kill in prison or severely injure members of a protected group. That evidence is not here. Yes, there is discrimination, there is harassment, and there are instances where suspected members of the LTTE group are arrested, and there is mistreatment in the prisons. What did the IJ say about the evidence that the army tortured his brother, and they continue to check in with his brother to find out where he is? I don't think that that's what the IJ found, and I don't think that that was the finding. I know the IJ didn't find that, but there was testimony that, he gave testimony that his brother is tortured and they're waiting for him to come back, and they keep checking in to determine his location and his contact information. I would say the record doesn't support that argument, because he, after all, was released when they had him in a camp, they pulled him out of the line, they questioned him, and they released him, and he proceeded to live in Sri Lanka for at least five months after that, they could have found him. And his brother was in a very similar situation, likely went to the same school, though it's not in the record. They lived in this area, he was a year behind him, and yet, if they suspected the petitioner of being LTT, they haven't gone after his brother. They did on one occasion, right after the war. He says they tortured his brother. In 2010. That's what he claims. However, there is a finding in this record that the mistreatment that he did was not of persecution or torture. There is no finding on whether he testified to that, but there is no finding that his brother was tortured. There was testimony to that, but there is no finding that his brother was tortured. There's no finding because the IJ ignored that testimony. I don't think the IJ ignored it. The IJ doesn't have to, and doesn't often, in very many cases, specifically state each and every piece of evidence that they consider. However, the IJ did find that the brother has been living there. The IJ didn't address it. Didn't address that testimony at all, and find that it was not credible. The IJ did have some issues with credibility. He did not make a credibility finding per se, but did say that he was concerned about certain aspects. But I would say that it is not necessarily relevant because the brother now, the IJ, it did find that the family is living there. The brother has not been bothered. He has been reporting regularly. In fact, there is an exhibit showing the reporting dates. He has never claimed that his brother was mistreated on any occasion after that. This was nine years ago that it happened. And it's a question of showing that you have a well-founded fear of future persecution in a case here where there is no past persecution. And I would just like to address one issue, Judge Branch, you asked whether he would be entitled to asylum if he were found to be an LTT member, and the answer to that is no, because there is a persecutor bar to people who are found either to have been a member or who provided material assistance. In this case there was no finding or there wasn't a charge that he provided material assistance, but that is a possibility if the case were remanded that it would be found, because there have been many cases where people who have done the types of things that he did in school as a youth were found to have provided material assistance to a terrorist organization. So although that was not an issue below, if this case were remanded, a bar could be raised to his entitlement. What if there's a determination that he was a member of the Sri Lankan terrorist organization and he suffered past persecution and he will be persecuted upon his return to Sri Lanka? Would he be entitled under the statute to asylum in a circumstance like that? No, no he would not. He would be barred from asylum, however Why would he be barred from asylum? Because the statute bars somebody who is a member of a terrorist organization from asylum and withholding a removal under the statute, and withholding a removal under the Convention Against Torture. It does in those situations allow the person to apply for what's called deferral of removal under the Convention Against Torture because if the person proves torture, not persecution, but if the person proves torture, they do have the option of applying for deferral of removal under the Convention and they would be granted that if they show that there was past torture and that they have a likelihood of being tortured in the future. So there is an outlet, but they are not If the court has no other questions. Thank you, Counsel. Thank you. Counsel, you've reserved some time for rebuttal. Yes, Your Honor. Your Honor, the government talks about the lines. There were two lines. Initially in 2009, immediately after the war, they separated people from LTT and non-LTT and he was not included. But after that, after when the aunt escaped, then they put him in another line to be taken to a busa camp known for torture along with the other 59 people. So finally, the last encounter, he was perceived as connected to the LTT and then he was about to be taken to another camp. Fortunately, some human rights organizations came, so that did not happen, Your Honor. And when was that when he was put in line and then the human rights organizations arrived and he didn't go anywhere else. Yeah, that was the last time, Your Honor. Then he escaped. When was the date of that? It must have been 2010, Your Honor. While he was in that camp. But then they escaped. After that, they escaped, went to Colombo. After five months, he left the country, Your Honor. Secondly, Your Honor, the court talks about the evidence the judge mentioned, but if you look at those all evidence, Your Honor, these are all promises by the government. So our argument that even if you take the record in total, because I cited even after the Prime Minister's statement, the UN reporter, UN rapporteur said problem there. The AP report said there are problems. LTT members are raped and tortured. Washington Post ran an article that LTT after all these Prime Minister's utterances, everything is hunky-dory, you can come back. After that, all these credible organizations put evidence to show that torture is still there, Your Honor. And then I cited a case, the Sixth Circuit case, the more or less same background materials. The Sixth Circuit said which the other documents, he cited some of the documents which the immigration judge seemingly glossed over suggest the continued pattern or practice of persecution against Tamils and sympathizers of LTT. More or less based on the same documents. The Sixth Circuit came up with a decision, Your Honor. Then finally, then even if he's a member, that is not for this court at this juncture, Your Honor. Then it's a material support, there are waiver, he testified, he was forced to do, then there are waivers even for that, for asylum. But I don't think we have to worry at this stage about those things, Your Honor. That's all, Your Honor. Thank you. The court will be in recess until 9 o'clock tomorrow morning. All rise.